IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PROSPECT CAPITAL CORPORATION, § | | |
| Plaintiff § | | |
| § | | |
| vs. § | CIVIL ACTION NO. 4-11-CV-00601 | |
| § | | |
| MICHAEL ENMON, THE ENMON § | | |
| IRREVOCABLE FAMILY TRUST, § | | |
| KARI ENMON, GRACE W. ENMON, § | | |
| KICKAPOO KENNELS, LLC, and § | | |
| JAMES VAN METER, as Trustee of § | | |
| THE ENMON IRREVOCABLE § | | |
| FAMILY TRUST, § | | |
| Defendants. § | | |

## AMENDED MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On August 23, 2008, the plaintiff, Prospect Capital Corporation ("Prospect"), obtained a $2,287,687.32 arbitration award against Michael Enmon[1] and, on October 14, 2008, the United States District Court for the Southern District of New York issued a final judgment in the case. Enmon has not satisfied the judgment, claiming that he has no assets. According to Prospect, post-judgment discovery has revealed that Enmon has acted fraudulently, transferring and concealing his assets. This is a summary of the genesis of the case before the Court.

### II. FACTUAL BACKGROUND

On October 3, 2007, after the arbitration started, Enmon transferred his royalty interests in 364.379 acres of minerals to his mother, Grace Enmon, for $80,000. Because Grace did not have the money to pay, Enmon accepted an unsecured, interest-free $80,000 note. On September 24, 2008, in anticipation of Grace selling a portion of those royalty interests, the Enmon

---

[1] Michael Enmon will be referred to as "Enmon" but the other defendants who share the same last name as him will be referred to by their first names.

1

Irrevocable Family Trust ("Trust") was created with Grace listed as the grantor and Enmon and his wife, Kari Enmon, as the beneficiaries.

Prospect claims that although a trustee was appointed, the Trust is actually controlled by Enmon and Kari. Hence, on December 2, 2008, when Grace sold a portion of the royalty interests for $700,000, it is argued that Enmon was the person orchestrating the sale. The record shows that Grace placed $400,000 into the Trust and used the remaining $300,000 to pay Enmon the $80,000 owed on the note. She also paid credit card and student loan debts for Enmon and Kari among other debts. Enmon then caused the Trust to purchase a tract of land for a pet hotel, the Kickapoo Kennels LLC. Also, the Trust and Kickapoo secured a $2.2 million loan to fund the business upon Enmon's application. The record also reflects that he and Kari each owns 5% of Kickapoo and the Trust owns the remaining 90%. In essence, Prospect claims and the record reflects that Enmon and Kari transferred the bulk of their assets to Grace, the Trust, and Kickapoo in the aftermath of the arbitration award.

On March 1, 2011, the Court granted Prospect's request for a temporary restraining order against the Trust and Kickapoo, enjoining them from, *inter alia*, transferring, selling, or distributing assets of the Trust and Kickapoo. On April 11, 2012, the Court granted Prospect's motion for contempt against the Trust, Kickapoo, and Kari for violating the temporary restraining order. The Court subsequently denied summary judgment motions filed by Prospect and some of the defendants, and the case was presented to the Court on November 5 and 6, 2012.

### III. CONTENTIONS OF THE PARTIES

#### A. *The Plaintiff's Contentions*

Prospect claims that it should prevail on its fraudulent transfer claims because it has satisfied all the elements under the Texas Fraudulent and Transfer Act ("TFTA"), namely that:

(1) a creditor-debtor relationship exists between the parties in that Prospect has an unpaid judgment against Enmon: (2) Enmon made a transfer of assets in his royalty interests to Grace, diverted his salary and bonuses into Kickapoo bank accounts, and caused Grace, Kari, the Trust and Kickapoo to acquire land and a bank loan for the Kickapoo kennel using those funds; and (3) Enmon transferred assets either (i) without receiving reasonably equivalent value in exchange; **or** (ii) he transferred assets with the intent to hinder, delay, or defraud Prospect. Prospect also argues that it should prevail on its civil conspiracy cause of action because it has satisfied all the elements of that claim. Lastly, Prospect alleges that it has proven common law fraud against Kari and Kickapoo.

### B. *The Defendants' Contentions*

Kari Enmon and Kickapoo argue that Prospect's common law fraud claim should fail against them because they made no representation to Prospect. They had no discussion, never communicated with, and had no relationship with Prospect. Kari, Kickapoo, and the Trustee contend that the statutory claim of fraudulent transfer against them should fail because there is no evidence that Enmon transferred any property to them. In other words, they argue that neither Kari, Kickapoo nor the Trustee is a transferee. The defendants together argue that, even if a transfer from Enmon could be established, Prospect cannot show that it was made with the actual intent to hinder, delay or defraud it. Lastly, the defendants claim that Prospect has failed to satisfy the elements of a civil conspiracy.

### IV. FINDINGS OF FACT

Based on the parties' pleadings, the testimony and documents received in evidence and the inferences that may be drawn, the Court adopts and makes the following findings of facts as modified.

In April of 2006, Enmon contacted Prospect and requested a $10 million loan for the

3

purchase of Caprock Pipe & Supply, LP. When that loan was not consummated, Enmon sued Prospect. Specifically, on or about December 4, 2006, Enmon sued Prospect in a Texas state court, claiming that Prospect was liable for $50 million because Prospect had declined to provide financing to his company. Prospect successfully moved to compel arbitration and initiated arbitration proceedings against Enmon in New York, seeking a declaration that it was not liable to Enmon and that Enmon must pay all of Prospect's attorneys' fees. The arbitration hearing began in New York on July 23, 2007, continued on July 24-27, September 27-29, 2007, and concluded on November 14-15, 2007.

On October 3, 2007, within a few days of giving his testimony, Enmon transferred his royalty interests in 364.379 acres of land that he had inherited from his father to his mother, Grace, in return for an unsecured $80,000 interest-free note. At the time of the transfer, Grace was a widow with almost no assets of her own, and depended on Enmon and his wife, Kari, for support. Hence, Grace had no ability to pay the $80,000 note apart from the Royalty Interests. The Court is of the opinion, based on expert testimony, that the Royalty Interests were worth $440,000 to $840,000 at the time of the transfer.

The evidence shows that Enmon set the "price" of the transfer of the Royalty Interests to Grace without negotiation and knew, or with the exercise of diligence, would have known, that the value of the Royalty Interests was rapidly increasing when he made the transfer. He also knew or reasonably should have known at the time of transfer that he would incur debts beyond his ability to pay, *i.e.*, attorney's fees. When Enmon transferred his Royalty Interests to his mother, he was fully aware that Prospect sought a monetary recovery from him that exposed him to millions of dollars in fees.

On April 14, 2008, the arbitrator dismissed Enmon's claims, awarded him nothing, and found for Prospect on all of its claims. The arbitrator directed Prospect to submit supporting

4

papers to calculate the final award against Enmon. In the summer of 2008, and in spite of the fact that he no longer owned the mineral interest, Enmon entered into negotiations with MAP Royalty, Inc. ("MAP"), to sell a portion of Grace's Royalty Interests for $700,000. On August 23, 2008 -- while Enmon was finalizing negotiations with MAP -- the arbitrator awarded Prospect $2,287,687.32 against Enmon. Within days, Enmon directed a lawyer to set up the Enmon Irrevocable Family Trust. The Trust was labeled as an irrevocable gift from Grace to Enmon and his wife, Kari, as the sole beneficiaries. Grace retained no benefit for herself. This arrangement meant that Grace, who depended upon Enmon to pay her monthly expenses, surrendered funds that could have been used to cover her expenses. The record shows that she, although over 82 years of age, has since resumed employment.

The $700,000 paid by MAP for half of the Royalty Interests, was distributed by Grace as follows: (i) 400,000 into the Trust; (ii) $80,000 to Enmon as "repayment" of the note; and, (iii) approximately $220,000 to pay off Grace's home mortgage, Enmon and Kari's credit card debts and student loans and unspecified personal debts and purchases. None of the expended funds were used to reduce the debt owed to Prospect by Enmon.

Finally, the facts show that Enmon, Kari and Grace have contributed to Kickapoo enterprise despite the fact that each had no legitimate reason to do so. For example, the Trust is a co-borrower with Enmon on the bank loan. The Trust "leases" its land to Kickapoo at below market rates. And, Grace and Kari are each personal guarantors on the loans to Kickapoo. Yet, to date, Kickapoo is an unprofitable business. Nevertheless, from at least March 1, 2011 through April 11, 2012, Enmon directed his annual salary of $180,000, plus bonuses, into a Kickapoo bank account rather than his own personal account. After directing his salary to Kickapoo, Kickapoo, in turn, paid at least $47,572.00 of Enmon and Kari's personal expenses, as well as

other unspecified personal expenses in an amount of at least $21,073.89.[2]

V. ANALYSIS AND DISCUSSION

*Fraudulent Transfer Claim.*

Prospect claims that the evidence establishes Enmon's intent to defraud under Tex. Bus. & Com. Code §§ 24.005(a)(1).[3] Prospect's argument is persuasive. Intent may be inferred from the following "badges of fraud:" (1) the transfer was made to an insider, including a relative; (2) the debtor retained possession or control of the transferred property after the transfer: (3) the transfer or obligation was concealed; (4) the debtor was sued or threatened with suit before the transfer was made or the obligation incurred; (5) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred; (6) the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred; and (7) the transfer occurred shortly before or after a substantial debt was incurred. *See* Tex. Bus. & Com. Code §§ 24.005(b); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 377 (Tex. App.-Houston [1st Dist] 2012, pet. denied); *BMG Music v. Martinez*, 74 F.3d 87, 89-90 (5th Cir. 1996).

The Court is of the opinion that each of the "badges of fraud" is present in Enmon's

---

[2] When called to testify in this case, Enmon refused to testify, relying on his Fifth Amendment right to remain silent. Prospect proffered a list of questions for the record and requested that the Court grant an adverse inference with regard to the questions. *See United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1970). The defendant cross-designated his own testimony as well. The Court is of the opinion that the testimony provided and the records admitted conclusively establish Enmon's intent to defraud by transfer, his assets to others. Therefore, whether by inference or acquiescence, the facts are undisputed.

[3] The statute provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the obligation":
    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
    (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
    (A)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
    (B)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. Tex. Bus. & Com. Code §§ 24.005(a)(1), (2)(B).

transactions. While an individual badge of fraud is not conclusive, "a concurrence of many badges in the same case will always make out a strong case of fraud." *Walker v. Anderson*, 232 S.W. 3d 899, 914 (Tex.App.-Dallas 2007, no pet.); *see also Wohlstein v. Alilezer*, 321 S.W.3d 765, 777 (Tex.App.-Houston [14th Dist] 2010, no pet.) ("although there is "no magic number" of factors that must exist, the presence of several "badges" may support an inference of fraud). In the case at bar, the testimony and evidence presented by Prospect establish multiple of the above-mentioned badges of fraud, giving rise to the Court's conclusion that Enmon's transfer was, in fact, fraudulent pursuant to § 24.005(a)(1).[4]

The Court also concludes that the transfers were fraudulent under Tex. Bus. & Com. Code § 24.005(a)(2).[5] The evidence establishes that Enmon transferred assets to Grace for less than reasonably equivalent value and that, at the time he made the transfer, he knew or should have known that he would incur debts beyond his ability to pay as they came due. Specifically, Enmon who appeared to have suspected that he would sustain a large arbitration judgment, transferred mineral interest to Grace for an $80,000 unsecured note. Grace had no money to pay the sale price and Enmon secured the sale with a promissory note that was paid only after he negotiated a sale of a portion of the mineral interests for $700,000. Based on those facts, the Court finds a violation of section 24.005(a)(2). See S.E.C. v. Resource Dev. Int'l, LLC, 487 F.3d

---

[4] To the extent that Kari Enmon and some of the other defendants argue that they had no intent to defraud, courts have held that the "transferees' knowing participation is irrelevant . . . for purposes of establishing the premise (as opposed to liability for) a fraudulent transfer . . . . The statute requires only a finding of fraudulent transfer on the part of the 'debtor.'" *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007); *see also Flores v. Robinson Roofing & Const. Co., Inc.*, 161 S.W.3d 750, 756 (Tex.App.-Fort Worth 2005, pet. denied) (noting that a transferee's awareness of the fraudulent nature of a transfer "is not an essential element of a fraudulent transfer claim"). Section 24.000(a) provides that a transfer is not voidable under § 24.005(a) if the transferee "took in good faith and for a reasonably equivalent value." Here, however, none of the defendants took in "good faith" and for "reasonably equivalent value." Moreover, good faith is an affirmative defense, with the burden on the transferees (Flores, 161 S.W.3d at 756), a burden that the transferees have not met in this case.

[5] Although the Court is of the opinion that the transfers were fraudulent under Tex. Bus. & Com. Code §§ 24.005(a)(1) and (2), it should be noted that the statute requires only that the plaintiff satisfy either one, not both, of the bases for fraud. *See* Tex. Bus. & Com. Code §§ 24.005(a)(1) or subsection (2); *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007).

295, 301 (5th Cir. 2007) (finding a fraudulent transfer under section 24.005(a)(2), where, inter alia, the transferee did not give "reasonably equivalent value in return").

Kari, the Trustee, James Van Meter, and Kickapoo argue that they were not "transferees" because there is no evidence that Enmon transferred property to them. That argument is unpersuasive because the law defines "transferee" broadly to include not only the first transferee of an asset but "any subsequent transferee[s]" if they are found to have participated in the fraudulent transfer. *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 726 (Tex. App.- Houston [1st Dist.] 2005, pet. denied); *United States v. Chapman*, 756 F.2d 1237, 1241-1243 (5th Cir. 1985) (the defendants transferred property to their son; the son subsequently conveyed the property to his sister, who then exchanged the property and cash for another property; the Court found a fraudulent transfer and allowed the IRS to enforce a lien against the last piece of property acquired); *see also Roland v. U.S.*, 838 F.2d 1400, 1401-1403 (5th Cir. 1988). Without doubt, Kari, the Trustee and Kickapoo are transferees.

The Court is of the view that, based on the facts and circumstances of this case, Grace, Kari, the Trustee and Kickapoo were aware of and facilitated Enmon's fraudulent scheme. The transfer "trail" reveals that Enmon transferred property to Grace, who in turn sold a portion of it to fund the Trust that used part of the proceeds to purchase property and secured a bank loan for Kickapoo. In this circumstance, Kari, the Trustee (and Trust), and Kickapoo became transferees. The documentary evidence supports this conclusion as Enmon is seen on all sides of these transactions.

The Court also concludes that Grace, Kari, the Trust and Kickapoo were not bona fide purchasers because, under the facts and circumstances of this case, they took "property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of [the] alleged transfer." *Phillips v. B.R. Brick And*

*Masonry, Inc.*, No. 01-09-00311-CV, 2010 WL 3564820, at *4 (Tex.App.-Houston [1st Dist] Sept. 10, 2010, no pet.)].

## VI. CONCLUSION

The Court is of the opinion that it need not address the plaintiff's common law fraud or conspiracy claims. This is so because a finding that Enmon committed statutory fraud that the remaining defendants participated in is sufficient to effect an appropriate remedy. As noted, each of the defendants participated in Enmon's scheme. Hence, Kickapoo, Grace, and Kari could not, and did not, become bona fide purchasers because they received property with full knowledge that the transactions were without adequate consideration and designed to avoid Enmon's impending debt. Id. Therefore, they are not able to shield the transfers and/or purchases.

## VII. REMEDIES

Prospect is entitled to levy execution on the assets transferred and on any proceeds in possession of the Trust or owed to the Trust. Accordingly, the Court shall enter a Final Judgment and Orders as follows:

A judgment voiding:

- the transfer of the Mineral Rights by Enmon to Grace;

- Grace's transfer of the proceeds from the sale of the Mineral Rights to the Trust;

- Grace's transfer of $80,000 from the sale of the Mineral Rights to Michael Enmon;

- all transfers of personal property of Michael Enmon into Kickapoo Kennels; and

- the transfer of Michael Enmon's half of his community estate or funds to Kickapoo Kennels.

- all transfers of money and/or property into The Enmon Irrevocable Family Trust, by any defendant, at any time, are voided.

- all transfers of money and/or property into Kickapoo Kennels, LLC, by any defendant, at any time, are voided.

A writ of attachment or turnover order in Prospect's favor may issue against all of the following:

- the remaining Mineral Rights and/or real interest in Enmon's 364.379 acre inheritance;
- the receivables of Kickapoo;
- the Kickapoo land;
- the personal property of Kickapoo; and
- all assets of the Trust.

The Court awards costs and attorneys fees to Prospect and against Enmon and Kari jointly and severally in the amount of $200,000;

The Court awards post-judgment interests to Prospect and against Enmon and Kari, jointly and severally;

Prospect shall receive the $79,645.89 held in the Registry of the Court;

Prospect is relieved of its obligation under the $5,000 bond posted for the issuance of the Temporary Restraining Order. Prospect shall prepare and file an appropriate judgment within 10 days of the entry of this Memorandum.

It is so Ordered.

SIGNED on this 5th day of February, 2013.

Kenneth M. Hoyt
United States District Judge